## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

DENISE STAPLES,                              :
                                             :
                  Petitioner,                :          Civ. No. 14-5727 (RBK)
                                             :
            v.                               :
                                             :          **OPINION**
VALERIE ARTHUR,                              :
                                             :
                  Respondent.                :
_____ :

**ROBERT B. KUGLER, U.S.D.J.**

### I.       INTRODUCTION

This matter is presently before the Court upon submission of a Petition for a Writ of
Habeas Corpus under 28 U.S.C. § 2254 (Pet., ECF No. 1), by Denise Staples ("Petitioner"). For
the reasons stated below, the Petition will be denied.

### II.      BACKGROUND

Petitioner is presently confined at Edna Mahan Correctional Facility in Clinton, New
Jersey. (ECF No. 1 at 2.) In 2003, Petitioner was charged with murder under N.J. STAT. ANN. §
2C:11-3a (count one); or aggravated manslaughter, N.J. STAT. ANN. § 2C:11-4a (first-degree);
manslaughter, N.J. STAT. ANN. § 2C:11-4b (second-degree); and possession of a weapon for
unlawful purpose under, N.J. STAT. ANN. § 2C:39-4d (third-degree) (count three). See State v.
Staples, Crim. No. 03-07-0600, 2006 WL 1417859, at *1 (N.J. Super. Ct. App. Div. May 19,
2006). Petitioner was convicted on Counts 1 and 3 on July 3, 2004, and the trial court imposed a
sentence of imprisonment for sixty years subject to the provisions of N.J.S.A. 2C:43-7.2. Id.;
(ECF No. 1 at 2.)

Petitioner filed a direct appeal, and the appellate court made the following findings.

The homicide occurred at defendant's home in Bridgeton. The victim, Ernest Mathews, was Staples's boyfriend with whom, according to her, she had been living for "about two or three weeks."

The death followed an argument between Staples and Matthews after several hours in which both had been drinking alcoholic beverages. During the course of the argument, Staples contended, Mathews had demanded sex and attacked her physically. Staples testified that she stabbed the victim with a kitchen knife during the extended altercation.

Defendant gave statements to the police at the scene and later at police headquarters. She testified at trial.

The issues as presented to the jury included the questions whether the stabbing was an act of self-defense, had been premeditated, or involved a lesser degree of culpability than required for a murder conviction.

Staples, 2006 WL 1417859, at *1. The appellate court held:

Our review of the record in the light of the arguments advanced by the parties and prevailing legal standards discloses that none of the issues raised on appeal have sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

We discern nothing in the prosecutor's summation amounting to misconduct that would invalidate the guilty verdict. Credibility was a key issue in the case. It was not inappropriate for the State to argue to the jury that defendant had not told the truth.

Defense counsel at trial did not request a charge on intoxication, and there was no sufficient evidence at trial that defendant's faculties had been "so prostrated that ... she was incapable of forming an intent to commit the crime," State v. Green, 318 N.J.Super. 361, 370 (App.Div.1999), aff'd o.b., 163 N.J. 140 (2000), as to require the court, sua sponte, to give such a charge. See State v. Mauricio, 117 N.J . 402, 418-19 (1990); State v. Cameron, 104 N.J. 42, 56 (1986); State v. Micheliche, 220 N.J.Super. 532, 543 (App.Div.), certif. denied, 109 N.J. 40 (1987). Whether or not defense counsel could have and should have developed such a showing and requested the charge is a matter that requires further development. We reject defendant's ineffective assistance arguments without prejudice to her opportunity to raise

them on an application for post-conviction relief. <u>See</u> <u>State v.</u>
<u>Preciose</u>, 129 N.J. 451, 460 (1992).

<u>Id.</u>

After denial of her direct appeal, Petitioner sought post-conviction relief ("PCR").
Petitioner alleged four grounds of ineffective assistance of counsel: (1) counsel failed to properly
communicate the plea offer; (2) counsel failed to pursue pertinent defenses; (3) counsel failed to
hire appropriate experts; and (4) counsel failed to investigate potential defenses. <u>See</u> <u>State v.</u>
<u>Staples</u>, Crim. No. 03-070-0600, 2014 WL 128037, at *2 (N.J. Super. Ct. App. Div. Jan. 15,
2014). Petitioner also argued that the cumulative errors deprived her of a fair trial. <u>Id.</u>

The appellate court quoted the following findings of the PCR Court:

> [d]ue to the fact that the Court finds that Mr. Swift adequately
> explained the plea agreement terms to defendant, that defendant
> was responsive to all questions during her plea rejection colloquy
> and that this Court rejects the psychological testimony suggesting
> she did not have the ability to understand the plea, the Court finds
> that [d]efendant fails to meet her burden under the first prong of
> the Strickland/Fritz analysis, to establish that her attorney was
> deficient in his explanation of the plea offer or that he failed to
> identify any mental defects that could have prevented defendant
> from understanding the nature of the plea offer or both.
>
>     ....
>
> Even conceding the first prong ... arguendo, [defendant] does not
> meet the second prong, particularly that such ineffective assistance
> would potentially change the outcome.
>
>     ....
>
> In the present matter, [defendant] has consistently maintained that
> she acted in self-defense. Self-defense is an absolute defense to
> [a]ggravated [m]anslaughter, the charge to which the State
> proposed that she plead guilty. Specifically, she told the police
> immediately after the incident that she acted in self-defense, she
> told her trial attorney that she acted in self-defense, she testified
> during trial that she acted in self-defense, she told the probation
> officer writing the pre-sentence report that she acted in self-

> defense.... Clearly, she has maintained that she is not guilty of any
> homicide, including [a]ggravated [m]anslaughter.
>
> Based upon all of the above, even if it would have been defendant's
> desire to plead guilty then and/or now, the Court would not accept
> such a plea, considering her consistent denial of guilt.

Staples, 2014 WL 128037, at *1-2.

> The appellate court rejected all of Petitioner's claims, stating:

> > We find no merit to these contentions, Rule 2:11–3(e)(2), and
> > therefore affirm substantially for the reasons stated by Judge
> > Telsey in his thorough written decision of August 17, 2011. Suffice
> > it to say, for defendant to obtain relief based on ineffective
> > assistance grounds, she is obliged to show not only the particular
> > manner in which counsel's performance was deficient, but also that
> > the deficiency prejudiced her right to a fair trial. Strickland, supra,
> > 466 U.S. at 687, l04 S.Ct. at 2064, 80 L. Ed.2d at 693; State v.
> > Fritz, supra, 105 N.J. at 58. We are persuaded that the alleged
> > deficiencies here clearly fail to meet either the performance or
> > prejudice prong of the Strickland test.

Id. at *2. The New Jersey Supreme Court denied review on July 18, 2014. See State v. Staples, 218 N.J. 531 (2004).

In the petition before this Court, Petitioner raises the following four grounds for relief: (1) ineffective assistance of counsel in communication of a plea offer; (2) ineffective assistance of counsel by failing to present an intoxication defense; (3) ineffective assistance of counsel by failing to retain expert witnesses related to the battered woman's syndrome; (4) prosecutorial misconduct in summation denied Petitioner a fair trial under the U.S. Constitution. (ECF No. 1, ¶ 12.)

Respondent filed a response in opposition to the petition. (Answer, ECF No. 3.) Petitioner did not file a traverse.

### III.   ANALYSIS

A.   <u>Standard of Review</u>

Title 28 of the United States Code Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. See <u>Eley v. Erickson</u>, 712 F.3d 837, 846 (3d Cir. 2013) (quoting <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, not the dicta" of the U.S. Supreme Court's decisions. <u>Williams</u>, 529 U.S. at 412.

An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. See <u>Eley</u>, 712 F.3d at 846 (quoting <u>Renico v. Lett</u>, 130 S. Ct. 1855, 1862 (2010)). In making the determination "whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set

5

of facts' that were before the state court." <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1399 (2011)

(quoting <u>Williams</u>, 529 U.S. at 405-06)). Review under § 2254(d)(1) is limited to the state court

record. <u>See</u> <u>id.</u> at 1398.

       "Where there has been one reasoned state judgment rejecting a federal claim, later

unexplained orders upholding that judgment or rejecting the same claim rest upon the same

ground." <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991). Upon habeas review, courts must "look

through" unexplained orders to the last reasoned decision. <u>Id.</u> at 804.

     B.    <u>The Habeas Claims</u>

       1.    <u>Ground One</u>

In support of her first ground for relief, Petitioner states:

> Petitioner received ineffective assistance from trial counsel during
> trial court proceedings based on numerous errors, including
> counsel's failure to thoroughly discuss the State's plea bargain
> offer of 14 years and to explain to petitioner her sentencing
> exposure if conviction of murder and the strengths and weaknesses
> of her possible defenses at trial and assessment of the possibility of
> success, and counsel's failure to have a psychological examination
> performed on petitioner as to ascertain her mental health condition
> at the time of the alleged crime, and the time of guilty plea in order
> to determine her capacity to comprehend the subjects being
> explained to her.

 (ECF No. 1 at 6.)

       Petitioner submitted a certification from her trial counsel, James Swift, in support of her

habeas petition. (Certification, ECF No. 1 at 18.) This certification will be considered because it

is part of the state court record in the PCR proceedings. (Certification, ECF No. 3-18.) Mr. Swift

knew Petitioner was not an educated person, but he did not know she functioned near the level of

an eleven-year-old. (ECF No. 3-18 at 2, ¶6.) It did not occur to him that Petitioner could not

distinguish between pleas of murder versus manslaughter. (Id. at 3, ¶9.) If he had known that, he would have discussed the plea offer in a different way. (Id.)

Respondent argues the PCR court applied Strickland to the plea negotiations and correctly found that defendant failed to meet either prong. (ECF No. 3 at 45.) Respondent asserts the PCR Court discounted defendant's argument that she was incapable of understanding the plea offer. (See id. at 51 (citing State v. Staples, No. 03-07-0600 (N.J. Super. Ct. Law Div. Aug. 17, 2011) ("ECF No. 3-24."))).) Furthermore, the PCR Court appropriately found that defendant failed to satisfy the second prong of Strickland, due to her persistent claim that she acted in self-defense. (ECF No. 3 at 55-56.)

The test announced by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984), governs claims that a petitioner was denied a fair trial because her counsel provided ineffective assistance. See Lafler v. Cooper, 132 S. Ct. 1376, 1384-85 (2012) (applying Strickland test). The Strickland test has two prongs:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.

The first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" Lafler, 132 S. Ct. at 1384 (quoting Hill v. Lockhart, 474 U.S. 52, 57 (1985) (quoting Strickland, 466 U.S. at 688))). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689.

"The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8 (2003) (per curiam) (citing <u>Bell v. Cone</u>, 535 U.S. 685, 702 (2002); <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 382 (1986); <u>Strickland</u>, 466 U.S. at 689; <u>United States v. Cronic</u>, 466 U.S. 648, 656 (1984)).

The second prong of the <u>Strickland</u> test, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the proceeding. <u>Lafler</u>, 132 S.Ct. at 1394 (quoting <u>Strickland</u>, 466 U.S. at 696). "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" <u>Collins v. Sec. of Pennsylvania Dept. of Corr.</u>, 742 F.3d 528, 547 (3d Cir. 2014) (quoting <u>Strickland</u>, 466 U.S. at 694). "Prejudice is viewed in light of the totality of the evidence at trial and the testimony at the collateral review hearing." <u>Id.</u> (citing <u>Rolan v. Vaugh</u>, 445 F.3d 671, 682 (3d. Cir. 2006)).

In this case, the state appellate court, on PCR review, explicitly adopted the findings and reasoning of the PCR Court in holding that trial counsel was not ineffective in communicating the plea offer to Petitioner. <u>Staples</u>, 2014 WL 128037, at *1-2. The court further held that even if counsel had been ineffective, there was no prejudice because the trial court would not have accepted a plea from Petitioner because she was adamant that she acted in self-defense and was not guilty. (<u>Id.</u>)

This Court must give "double deference" to the state court's ruling on ineffective assistance of counsel claims because habeas review under the Antiterrorism and Effective Death

Penalty Act ("AEDPA") requires a habeas court to give the state court and the defense attorney the benefit of the doubt. Woods v. Donald, 135 S. Ct. 1372, 1376 (2015).

The PCR court determined that defense counsel, Mr. Swift, adequately explained the plea agreement terms to Petitioner. (ECF No. 3-24 at 7-8.) Mr. Swift's testimony was credible because the affidavit he provided to Petitioner's PCR counsel was neutral and candid, admitting he would have explained the plea deal differently if he had been aware of Petitioner's alleged mental limitations. (ECF No. 3-24 at 8.) The PCR Court, however, found that Petitioner did not have the mental limitations she alleged. (Id.)

The PCR Court also credited Mr. Swift's testimony because it was corroborated by his statements to the trial judge at the plea rejection hearing. (Id. at 9.) Mr. Swift testified that he met with Petitioner "many, many" times to discuss the case and plea offer. (Id.) Finally, the court credited Mr. Swift's testimony because he admitted that Petitioner was not of the highest intellect, but he found that she was cogent, responsive and seemed to understand. (Id.) The plea rejection hearing was consistent with Mr. Swift's testimony. (Id.) Petitioner's allegation of not understanding was raised years after the fact and was self-serving. (Id.)

The PCR Court considered expert testimony on the issue of whether Petitioner was capable of understanding the plea offer. (ECF No. 3-24 at 9-10.) Dr. Michaels' opinion that Petitioner was capable of understanding the plea offer was corroborated by the fact that Petitioner earned her GED, while incarcerated, in November 2009. (Id. at 10.) Dr. Dougherty's opinion was based on his evaluation of Petitioner years after the crime. (Id.) His opinion was inconsistent with Petitioner's ability to earn her GED, equivalent to a seventh grade level, higher than what she tested at with Dr. Dougherty. (Id. at 11.)

Significantly, the PCR Court found that Dr. Dougherty's evasive testimony about Petitioner's GED score undermined his entire opinion. (Id.) Dr. Dougherty testified that Petitioner probably would not be admitted to many colleges or even junior colleges with her GED score. (Id.) He failed to explain how she tested at such a higher level just two years after he tested her. (Id. at 11-12.)

The PCR Court held that even if counsel had been ineffective in communicating the plea offer, there was no prejudice because the trial court would not have accepted Petitioner's plea. (Id. at 14.) Petitioner told her trial attorney, the jury, the probation officer who wrote the PSR, the PCR Court, and Dr. Dougherty and Dr. Michaels that she acted in self-defense. (Id.) New Jersey law does not allow a judge to accept a guilty plea unless satisfied that the Defendant committed the crime charged. (Id. at 13.) The trial court could not have accepted her plea if she believed she was innocent. (Id. at 14.)

The state courts' determination that trial counsel was not ineffective in communicating the plea offer to Petitioner is well supported by the record. Thus, the state court's findings of fact are not unreasonable. See Wheeler v. Rozum, 410 F. App'x 453, 459-60 (3d Cir. 2010) (per curiam) ("[e]ven if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the [state] court's determination") (quoting Wood v. Allen, 558 U.S. 290, 300 (2010)).

In any event, there was no resulting prejudice to Petitioner because the PCR Court reasonably concluded the trial court would not have accepted her plea. See Wheeler, 410 F. App'x at 460 (state court finding of no prejudice was reasonable where trial counsel testified that defendant would not accept a plea offer under any circumstances). By no means did the state

court unreasonably apply the <u>Strickland</u> test in denying this claim. Thus, this Court will deny

Ground One of the petition.

        2.    <u>Ground Two</u>

In support of Ground Two of the Petition, Petitioner states:

> Defense counsel at trial failed to advocate an intoxication defense
> and failed to request an intoxication jury charge despite the
> incontrovertible evidence that petitioner had been drinking on the
> day of the victim's death, that petitioner had apparently suffered
> from blackouts as a result of her drinking, that the victim had also
> been drinking at the time of the stabbing, and trial counsel
> conceded in his own certification that he had been derelict in
> failing to obtain records related to petitioner's mental health or
> alcoholism and hire an expert in this field to assist the defense.
> (See Exhibit A).

(ECF No. 1 at 8.) In his certification to the PCR Court, Mr. Swift stated that he would have hired

an expert if he had realized Petitioner was a pathological alcoholic who may have blacked out for

some or all of the incident and may not have accurately remembered what occurred. (ECF No. 3-

18 at 3, ¶ 8.)

Respondent asserts the PCR Court properly found that defense counsel's choice of

defense constituted sound trial strategy. (ECF No. 3 at 60.) Additionally, the PCR Court found

"no basis to conclude that defense counsel provided ineffective assistance in failing to pursue an

intoxication defense." (<u>Id.</u> at 62-63.)

The PCR Court considered New Jersey law regarding the intoxication defense:

> It is not the case that every defendant who has had a few drinks
> may successfully urge the defense. The mere intake of even large
> quantities of alcohol cannot be established solely by showing that
> the defendant might not have committed the offense had he been
> sober. . . . What is required is a showing of such a great prostration
> of the faculties that the requisite mental state was totally lacking.
> That is, to successfully invoke the defense, an accused must show
> that he was so intoxicated that he did not have the intent to commit

> an offense. Such a state of affairs will likely exist in very few
> cases.

(ECF No. 3-24 at 17 (quoting <u>State v. Cameron</u>, 104 N.J. 42, 54 (1986) (quoting <u>State v. Stasio</u>,

78 N.J. 467, 495 (1979)).)

The PCR Court noted that Mr. Swift reviewed Petitioner's jail records, medical records,

and all of the evidence available to him, and it did not give him a reasonable basis to proceed on

the intoxication defense. (<u>Id.</u> at 18.) The court also independently reviewed the evidence and

found the evidence would not lead a reasonable jury to conclude that Petitioner was intoxicated

to the point that her faculties were prostrated. (<u>Id.</u>) Mr. Swift also testified that, in his experience,

intoxication defenses were not particularly successful. (<u>Id.</u> at 18-19.)

Dr. Dougherty testified that Petitioner suffered from effects of excessive alcohol abuse

over an extended period of time. (<u>Id.</u> at 20.) The PCR Court, however, noted that Dr.

Dougherty's testimony was based on Petitioner's claims, not independent medical testing. (<u>Id.</u>)

Even if Petitioner was a chronic alcoholic, this did not help determine her intoxication level or

mental state at the time of the crime. (<u>Id.</u>)

Finally, the PCR Court found most compelling Mr. Swift's testimony that self-defense

and intoxication were inconsistent defenses that would undermine the defense's credibility if

both were presented to the jury. (<u>Id.</u> at 20.) In other words, Petitioner could not credibly argue

both that she was so drunk she did not know what she was doing but that she knew she had to act

in self-defense. (<u>Id.</u>) Therefore, the PCR Court concluded trial counsel was not ineffective in

failing to raise an intoxication defense or in failing to hire an expert on the intoxication defense.

(<u>Id.</u>)

The PCR Court's determination was well-reasoned and supported by the state court

record, particularly that the self-defense and intoxication defenses are not consistent. Petitioner

gave inconsistent statements to police on the night/early morning of the stabbing, claiming self-defense. (ECF No. 3-58 at 13-16; 3-59 at 4-6; 3-63 at 14-15.) Petitioner's inconsistent statements would likely have been introduced by the prosecution even if Petitioner did not assert self-defense at trial.

Mr. Swift reasonably believed that an intoxication defense, requiring a showing that the defendant was so intoxicated that she was not in control of her faculties, was not likely to be successful in light of other evidence. See Young v. Folino, Civ. Action No. 08–2164, 2009 WL 5178302, at *16 (E.D. Pa. Dec. 23, 2009) (finding where trial counsel considered intoxication and self-defense theories and selected option that he felt had best chance of succeeding was sound trial strategy.) Petitioner, therefore, has not shown the PCR Court's determination involved an unreasonable application of the Strickland test. Thus, Ground Two of the habeas petition will be denied.

   3.  Ground Three

In support of her third ground for relief, Petitioner states:

> Defense counsel at trial provided ineffective assistance by failure
> to retain expert witnesses on the subject of domestic violence as
> related to the "battered woman's syndrome" and bolster
> petitioner's defense that she had acted in self-defense out of an
> instinct to preserve her own life when she stabbed the victim.

(ECF No. 1 at 9.)

Respondent notes Petitioner did not directly address this issue in her appeals. (ECF No. 3 at 73.) However, the PCR Court addressed the issue and found counsel exercised sound trial strategy in not raising the battered woman's defense. (ECF No. 3-24 at 22.) Raising the defense would have permitted the State to introduce evidence under New Jersey Rule of Evidence

404(b).[1]  There was evidence that Petitioner's past criminal history "consisted of stabbings of previous paramours." (Id.) This information would have "fatally undercut" Petitioner's claim of self-defense. (Id.) Therefore, the PCR Court concluded it was sound trial strategy for counsel not to pursue an expert on battered woman's syndrome. (Id.)

Here, it was sound trial strategy to avoid admission of evidence that Petitioner had stabbed other boyfriends in the past. See Darden v. Wainwright, 477 U.S. 168, 186 (1986) (defense counsel used sound trial strategy in deciding not to present evidence that defendant was a family man, because it would have invited admission of evidence that the married defendant was on a weekend furlough with his girlfriend.) The state court did not unreasonably apply the Strickland test. Thus, the Court will deny Ground Three of the petition.

4.    Ground Four

In support of her fourth and final claim for relief, Petitioner argues, "[t]he prosecutor at trial made improper and prejudicial remarks during summation, so as to deny the petitioner a fair trial under the U.S. Constitution." (ECF No. 1 at 11.) Respondent contends the prosecutor's comments were reasonable inferences based on the evidence, and in no way denied Petitioner a fair trial. (ECF No. 3 at 77.) Petitioner argues it was misconduct for the prosecutor to comment on the defendant's credibility, but defense counsel, in his own summation, stated that Petitioner's testimony "rings true." (Id. at 76-77.)

---

[1] New Jersey Rule of Evidence 404(b) provides:

> (b) Other Crimes, Wrongs, or Acts. Except as otherwise provided by Rule 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

Habeas Rule 2(c) requires a petitioner to "state the facts supporting each ground" in the habeas petition. See Rule 2(c) of Rules Governing Section 2254 cases in the United States District Courts. Petitioner did not identify any of the prosecutor's statements that she challenged as misconduct. Nonetheless, for sake of completeness, the Court will address the merits of the claim by looking to the Petitioner's brief on direct appeal.

Petitioner contended that the prosecutor, by either directly or indirectly calling her a liar, violated her duty not to express her personal belief about the truth or falsity of the defendant's testimony. (Brief and Appendix on Behalf of Defendant-Appellant, State v. Staples, No. A1-141-04T4 (N.J. Super. Ct. App. Div. Oct. 28, 2005, ECF No. 3-6 at 12.) Petitioner also argued the prosecutor committed misconduct by calling defendant's story of what happened ridiculous. (ECF No. 3-6 at 11-13.)

The prosecutor described Petitioner's possible motivation to kill the victim, she was angry that the victim would not drive her to the liquor store, so she went into the kitchen and got a knife and stabbed him. (Id. at 14.) Apart from Petitioner's trial testimony, there was no direct evidence of her motivation to stab the victim. There was also no direct evidence that Petitioner went into the kitchen alone to get a knife to take to the bedroom to stab the victim.

The prosecutor also commented on the lack of bruising in the tissue around Petitioner's eye, suggesting her claim that the victim punched her in the face was false. (Id. at 13.) The prosecutor stated, "this is not a self-defense case. She was not defending herself from a rape." (Id. at 14.)

The standard governing prosecutorial misconduct announced by the Supreme Court is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Fahy v. Horn, 516 F.3d 169, 198 (3d Cir. 2008) (quoting

Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted)). When a defendant testifies at trial, a prosecutor may attack her credibility to the same extent as any other witness. Id. at 203 (citing Fitzpatrick v. United States, 178 U.S. 304, 315 (1900)). This does not mean the prosecutor can express her personal opinion of the defendant's credibility. Id. at 203 (citing Berger v. United States, 295 U.S. 78, 88 (1935)). Ultimately, the Court must examine the prosecutor's challenged comments in the light of the entire proceedings, and determine whether the comments so infected the trial with unfairness so as to deny the defendant due process. Id. at 204 (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

Addressing Petitioner's prosecutorial misconduct claim, the New Jersey Superior Court Appellate Division held: "[w]e discern nothing in the prosecutor's summation amounting to misconduct that would invalidate the guilty verdict. Credibility was a key issue in the case. It was not inappropriate for the State to argue to the jury that defendant had not told the truth." Staples, 2006 WL 1417859, at *1.

The following evidence supported the prosecutor's attack on defendant's credibility. Two witnesses testified they heard Petitioner say she stabbed the victim while he was sleeping. (ECF No. 3-59 at 14; ECF No. 3-62 at 5.) Dr. Hood testified that the track wound was not consistent with the defendant's testimony that the victim was on top of her when she stabbed him. [ECF No. 3-64 at 13-16]. Priscilla Brown, who was present at the scene just after the stabbing, testified it did not look like a struggle had occurred in the defendant's apartment. (ECF No. 3-62 at 8.) Vanessa Edwards did not see any injuries on the defendant that night, and the defendant did not complain about being in pain. (ECF 3-60 at 15.) Detective Cuff, also in the apartment on the night of the stabbing, did not see any evidence of a struggle. (ECF No. 3-62 at 12-16.)

The prosecutor's speculation regarding Petitioner's motivation, anger at the victim for sleeping in her bed and for not taking her to the liquor store, could reasonably be inferred by the evidence in the record. A neighbor testified that, earlier in the day of the stabbing, she heard defendant scream "Get out of my house" and "This is my house. I can lay down if I want to." (ECF Nos. 3-60 at 18; 3-61 at 7-8.) Vanessa Edwards testified that she had refused the defendant's request to take her to the liquor store that evening, but she went with the defendant to her apartment to drink a beer. (ECF. No. 3-60 at 8.)

While Ms. Edwards was in the defendant's apartment, about an hour before the stabbing, she saw the victim sitting calmly on the couch. (ECF No. No. 3-60 at 9-10.) He said he was tired and got up and went into the bedroom. (Id. at 10.) Ms. Edwards testified that the defendant yelled at the victim, "get the F--- out of my bed. Get up." (Id. at 11.)

Priscilla Brown testified that, around midnight, she and another neighbor saw the defendant outside crying, and asked her what was going on. (ECF No. 3-62 at 5.) Ms. Brown testified the defendant said "he's in my bed sleeping. I think I stabbed him." (Id.) Ms. Brown and several other neighbors went into the defendant's bedroom and found the victim lying face down on the floor by the door. (Id. at 7.) A set of keys were found in the bed. (ECF No. 3-59 at 8.) Detective Cuff went into the apartment on the night of the stabbing, and he testified that it did not look like a struggle occurred. (ECF No. 3-62 at 12.)

In light of the trial record as a whole, the prosecutor's comments about Petitioner's credibility, and the prosecutor's theory of how and why the stabbing occurred, were based on reasonable inferences drawn from the evidence. The comments were not presented as the personal opinion of the prosecutor. Thus, the state court reasonably applied Darden v.

<u>Wainwright</u>, and found no prosecutorial misconduct. This Court will deny Ground Four of the habeas petition.

## IV.    CERTIFICATE OF APPEALABILITY

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's discussion of Petitioner's claims demonstrates that Petitioner has not made such a showing. The Court will not issue a certification of appealability.

## V.    CONCLUSION

For the reasons set forth above, the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1) will be denied. An appropriate order follows.


DATED:   October 29, 2015

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge
